### 11423

### SUMNER v. S. A. L. RY. CO.

#### (121 S. E., 472)

1. TRIAL—REFUSAL OF INSTRUCTIONS PROPER IN VIEW OF THOSE GIVEN WHEN CONSIDERED AS AN ENTIRETY.—In an action against a carrier for loss of goods during shipment, requested instructions *held* properly refused in view of instructions given when considered as entirety.

2. APPEAL AND ERROR—EXCEPTION TO REFUSAL OF NEW TRIAL ON GROUND OF INSUFFICIENCY OF EVIDENCE OVERRULED IN ABSENCE OF MOTION FOR NONSUIT OR DIRECTED VERDICT.—Where there was neither

a motion for nonsuit nor for a directed verdict as required by Circuit Court Rule 77, an exception to an order refusing a motion for a new trial on the ground that there was no evidence to support the verdict cannot be sustained.

Before SHIPP, J., Darlington, November, 1922.    Appeal dismissed.

Action by Ernest D. Sumner against Seaboard Air Line Railway Co.    Judgment for plaintiff and defendant appeals.

The Circuit Judge's charge follows:

Mr. Foreman and Gentlemen of the Jury:    When you go into your jury room, you will have this paper, the yellow paper here, the complaint of the plaintiff, which sets out the plaintiff's contention in this case.    Then you have the other paper, this blue paper, the answer of the defendant, and on these papers, the complaint and answer, the issues in this case are made up.    I am not going to read these papers to you; it takes too long.    I am going to state briefly what my conception of the contention of these parties is, and you can read the papers for yourselves if I do not state it fully enough for you.

Mr. Sumner brings this suit against the Seaboard Air Line Railway Company, and says that some time in November, November, 13, 1916, that he delivered 10 bales of burnt cotton to the Seaboard Air Line Railway Company, through its agent at Hartsville, S. C., for shipment over the line of the Seaboard Air Line and its connecting line, consigned to A. R. Durkee & Co., in Philadelphia, Pa.    He alleges that the railroad company so negligently conducted itself in regard to this shipment that the shipment was delayed, and he was injured, damaged in the sum of $441.50.    He alleges that the value of the cotton at the time of the shipment was $441.50, and he says he has been damaged by reason of the delay in the shipment of the cotton in the sum of $441.50.

Now, the defendant denies all of the allegations of negligence alleged against it, and the first defense is that the cotton was received by its agent contrary to the instructions

from the defendant, and that they had no right to receive the cotton, and that in receiving the cotton, that the agent of the defendant disobeyed instructions. The second defense is that the Interstate Commerce Commission approved the rule of the company, whereby it was allowed, the railroad company was allowed, to reject all shipments of burnt cotton, or cotton classed as a hazardous risk, and it says that it was provided in that rule that no agent of the railroad company should receive for shipment burnt cotton until he forwarded notice of the application to ship the cotton to the headquarters of the company at Norfolk, Va., and if they approved of the shipment, then they were to notify the agent, and then the agent was to accept it.

Now, it has been argued to you that a rule of this sort on behalf of the railroad company would be binding on the public, and it has been noticed in argument before you that that is a rule with regard to rate, that is a rule in regard to rate, because that is a matter concerning the public. Railroad companies are required to treat everybody alike when they charge them freight rates. They have no right to give you a less rate than me, and me than you, and if a railroad gives one person a lower rate than another person, he is allowed to go into Court and recover back the excess. That is a matter of public policy. But the rule in question is not a rule affecting public policy at all, but it is for the benefit of the railroad company, and they are allowed, under the rule, to refuse a shipment of cotton; but if they receive the cotton they are bound to use reasonable diligence to safely carry and transport the property so received with reasonable dispatch. I charge you that if the railroad company received the cotton in question through its agent at Hartsville, whether the agent disobeyed instructions or not, if the company received the freight and did not offer to return it, they ratified the acts of the agent, and they are bound to show reasonable diligence to safely transport that cotton to destination, and to do it with reasonable dispatch. Now, it

was the duty of the railroad company to transport that cotton until it delivered it to a connecting carrier, and if the connecting carrier refused to receive it, the railroad's duty was to notify the shipper, and to do that with promptitude, and then it would have been the duty of the shipper to have given him other directions. If the railroad holds the cotton without notifying the shipper, and causes delay, the railroad company would be responsible for it.

I charge you that as far as the Clyde Line is concerned, there has been introduced in evidence an order, approved by the Railroad Commission, authorizing any common carrier, the Clyde Line in particular, to refuse to receive cotton classed as burnt cotton; if the cotton was a hazardous risk, to refuse to accept it. However that may be, if there was negligence, if the cotton was delayed through negligence, under the Carmack Amendment that you have heard referred to here, a law passed by Congress, that makes the initial carrier, the carrier that receives the freight, liable if there is unreasonable delay in the shipment of freight; it makes the initial carrier liable, even if it was not negligent itself. If any of the carriers were negligent along the line, the initial carrier is made responsible for any damages that result, by this act of Congress.

Now, Mr. Foreman, what would be the measure of damages? You find out what that cotton was worth at the time that it should have been delivered in Philadelphia, what the market value at that time was; then you find out what the market value was at the time it was carried to Philadelphia; and the difference now between the market value at the time it ought to have been delivered and the market value at the time it was delivered, that would be the measure of damages.

I charge you, Mr. Foreman, that where a person ships a shipment of freight—say, if the plaintiff shipped this cotton from Hartsville to the plaintiff's agent at Philadelphia—it is the duty of the agent of the plaintiff to receive the cotton

in Philadelphia, if it was tendered to him, no matter if there was delay, he had no right to reject it absolutely, he had no right to decline to receive the cotton, but it would be his duty to receive the cotton, and all he can recover, if he recovers anything would be the difference between the market price of the cotton at the time it ought to have been delivered in Philadelphia and the market price at the time it was delivered in Philadelphia.

That is about all the law there is in the case.

If you find for the plaintiff, you find out what the market value of the cotton was, find out what the price of the cotton was at the time it ought to have been delivered in Philadelphia, and find out what the market value was at the time that it was delivered, and take the difference and give the plaintiff a verdict for the difference.

Now, Mr. Foreman, as I understand the law, if the cotton was tendered to the agent of the plaintiff, it is his duty to receive it. He would be entitled to recover the difference if the cotton could not be sold for as much at the time it was tendered as. it could have been when it ought to have been tendered. He is entitled to the difference. You and I don't make the law. When a person comes into Court, you and I are bound by the law and the evidence. We have not the right to take the money of one person and give it to another, unless he is entitled to it. It is not what you or I think ought to be; it is the law that governs. I remember trying a case some time ago here where a party sued for a certain amount, and he proved in Court a much less amount than he sued for; but his lawyer, in arguing to the jury, asked only for the amount that he proved. The jury went out and gave a verdict for the full amount sued for. We must decide this case according to the evidence in this case. Thos things are largely under the control of the Judge. The Judge listens to the testimony on the civil side of the Court, and the verdict of the jury is somewhat under the control of the Judge, because the jury must bring in a verdict ac-

cording to the testimony in the case. So that is what you are sworn to do. You are sworn to try this case according to the evidence, and under the law.

It is the duty of the plaintiff to make out his case by the greater weight or preponderance of the testimony. That does not necessarily mean that the plaintiff must put up more witnesses than the defense, but means that he must bring testimony before you that weighs more in your minds than the testimony on the other side. Place in your minds an imaginary pair of scales, and place the testimony in favor of the plaintiff's view of the case in one side of the scales, and place the testimony in favor of the defendant's view in the other, and for the plaintiff to recover his testimony must weigh most; the scale in which his testimony is placed must go down. If there is an even balance, or if the testimony in behalf of the defendant is heavier, give a verdict for the defendant.

Now, I have been asked by the defendant to charge you certain propositions. They ask me to charge you:

Plaintiff alleges in his complaint that A. R. Durkee & Co., of Philadelphia, Pa., to whom the cotton in question was consigned, were his agents. If, and when they received notice of the arrival of the cotton, it was their duty, as plaintiff's agents, to receive the same. If they refused to do so, any subsequent decline in the market value must be lost by Mr. Sumner. The defendant, Seaboard Air Line Railway Company, would not be responsible or liable for any such loss.

That is true. I have already charged you that the measure of damages was the difference in the market price at the time it ought to have been delivered, and the market price at the time that it was delivered. Of course, if they tendered the cotton to his agent, it was his duty to receive the cotton. He had no right to reject it, and if his loss resulted because he did not receive it, then he could not re-

cover for any damages that resulted after he declined to receive it.

Mr. Sumner has alleged that A. R. Durkee & Co., of Philadelphia, Pa., were his agents. If and when they received notice of the arrival of the cotton in question, it was their duty to receive it, and Mr. Sumner would be responsible and liable for all proper storage charges that accrued after refusal to receive it.

Now, gentlemen, I don't think you need concern yourselves with any storage charges at all. If you find what the cotton was worth when it ought to have been delivered in Philadelphia, and what it was worth at the time that it was delivered in Philadelphia, find what the difference was and give him a verdict for the difference, because, as I charged you, it was his duty to receive the cotton. If there was any loss when he did not receive it, he could not hold anybody responsible for it.

The plaintiff has alleged that A. R. Durkee & Co. were his agents. If they received notice of the arrival of the cotton and refused to receive it, the lawful expenses of the sale are properly deductible from the proceeds of sale, if the cotton was sold according to law; and such expenses must be paid by Mr. Sumner.

Well, I might say to you, Mr. Foreman, if this cotton was shipped to Durkee & Co., who were the agents of the plaintiff, and they were notified that the cotton had arrived in Philadelphia, it was the duty of Durkee & Co. to receive the cotton, and the plaintiff would be entitled to recover the difference in the value of the cotton at the time it ought to have been delivered in Philadelphia, and the time that it was actually received. Of course, if Durkee & Co. did not take it out, and it was stored in a warehouse, why the warehouse had a right to charge storage, and had a right to sell it for the storage, according to the law of Pennsylvania. But if you will stick to the rule I have given you, find out what the value was when it ought to have gotten there, and what

it was worth when it did get there, and give him a verdict for the difference, if you give him a verdict at all. You need not take into account, then, what actually became of the cotton.

They ask me to charge you about these rules, asked me to charge you that the agent of the company could not waive the rule. I have already charged you that, and I refuse to charge you, as requested, that rule.

He asks me to charge that there is no evidence of any injury to or conversion of the cotton in question, the measure of damages is the difference between the market value of the cotton when it should have arrived and such value when it did arrive. Therefore, even if it were admitted that the defendant, Seaboard Air Line Railway Company, is liable for any amount, Mr. Sumner could not recover in any event more than the difference between the value of the cotton at the time when it should have arrived and such value when it did arrive; and he cannot recover any difference in value if, at any time after the cotton arrived, he or his agents could have accepted and sold the same without loss, but refused to do so.

Well, there is no evidence of conversion, Mr. Foreman. If the cotton was delivered in Philadelphia at all, tendered to the plaintiff, then there could be no conversion.

Now, he asks me to charge you that if the cotton was offered to Mr. Sumner, through his attorney, after this action was commenced, and he failed or refused to accept the same, and if, at the time, the cotton was worth as much as or more than it was worth when it should have arrived in Philadelphia, and if by then accepting it, he would have suffered no loss, he cannot recover any amount, and your verdict must be for the defendant.

I don't know any law that requires an attorney to receive property. If he tendered the cotton to Mr. Sumner in accordance with his contract, his contract was to tender the cotton in Philadelphia, not to an attorney in South Carolina.

I decline to charge you that. If you find for the plaintiff, say we find for the plaintiff so much, writing it in words and not in figures. If you find for the defendant, say, "We find for the defendant," and sign your name as foreman.

*Messrs. Dargan, Paulling,* for appellant, cite: *Special agreement to violate tariff rules invalid:* 85 S. C., 458; 225 U. S., 155; 226 U. S., 441; 119 Fed., 808. *Duty of consignee as agents for plaintiff to receive cotton:* 82 S. C., 375; 91 S. C., 552. *Refusal of shipper who is both consignor and consignee to accept goods constitutes an abandonment:* 10 C. J., 271, Sec. 388. *Right of action was limited to impairment of value due to delay:* 82 S. C., 375; 91 S. C., 552; 10 C. J., 279.

*Messrs. Miller & Lawson,* for respondents, cite: *Exceptions violate rule 5 Subd. 6 of the Supreme Court:* 100 S. C., 43; 100 S. C., 276; 95 S. C., 382; 44 S. C., 556; 39 S. C., 554; 41 S. C., 554; 9 S. C., 283. *Exception that there was no evidence would not be considered as there was no motion for non-suit or directed verdict:* Rule 77, C. C., 83 S. C., 271; 88 S. C., 87; 86 S. C., 539; 116 S. C., 210; 110 S. C., 318; 113 S. C., 522. *Circumstances show conversion by defendant:* 5 Enc. L. 2nd Ed., 231; 2 Strob. Eq., 370. *Carrier's duty to receive cotton:* 10 C. J., 41. *Carrier may make reasonable regulation:* 10 C. J., 64; 95 S. C., 201. *But the rule which it systematically disregards cannot be set up as defense:* 10 C. J., 65; 174 S. W., 855; 105 S. C., 410. *Having accepted cotton is was estopped:* 4 R. C. L., 655; 6 Cyc., 668; 29 L. R. A. (N. S.), 1214; 20 L. Ed., 423; 14 Rich., 188; 56 S. C., 136; 65 S. C., 271; 4 Ell. Railroads Sec. 1466; 73 S. C., 13. *Carrier cannot stipulate against its own negligence:* 62 L. Ed., 820. *Tender cannot be made to attorney of shipper:* 2 Mecham Agency Sec. 2163; 39 S. C., 498; 6 S. C., 409; 4 S. C., 10; 4 DeS., 44.

February 12, 1924.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"This action was commenced in August, 1917, to recover $441.50, the alleged value of 10 bales of burnt cotton delivered by the plaintiff to the defendant, in good order, on or about November 13, 1916, for prompt transportation and delivery to A. R. Durkee & Company, plaintiff's agents in Philadelphia, Pa., and which is alleged to have been 'delayed, injured, damaged and wholly lost, to plaintiff's injury and damage the value thereof,' by defendant's reckless, willful, wanton, and negligent conduct in regard thereto.

"For a first defense, the defendant admits the receipt of the cotton for transportation and delivery in Philadelphia as alleged, but alleges that it has not sufficient information to form a belief as to the condition or value of the cotton, and that the same was received by its agent without authority and in disregard and violation of his instructions and of defendant's published rules and regulations, which had been filed with and approved and authorized by the Interstate Commerce Commission; and the defendant denies each and every other allegation of the complaint.

"For a second defense, the defendant alleges that on the 3d day of May, 1913, it filed with the Interstate Commerce Commission at Washington, D. C., its circular N. W. No. 664 (I. C. C. No. A-2843) wherein and whereby it was and is required that when shipments of burnt cotton are offered for forwarding, the defendant's agents must require shippers to furnish a full history of the same, giving the time of fire, number of bales, condition of cotton (that is, whether wet or not, and entirely free from fire), condition of covering, and any other information that may be of assistance, and that such information must be forwarded to the office of the defendant's general freight agent at Norfolk, Va.,

and that defendant's agents must decline to receive any shipment of burnt cotton except upon specific authority from the defendant; that the cotton described in the complaint was delivered to the defendant without compliance with, but in violation of, the requirements of the said circular which had been duly approved and authorized by the Interstate Commerce Commission, and was published in the manner prescribed by law and by the regulations of the said Interstate Commerce Commission, and that the defendant's agent was not authorized to accept said cotton for shipment, but received the same in violation of the requirements of the said circular, and that the defendant is therefore not liable for loss of or damage to the said cotton.

"The case was tried before Hon. S. W. G. Shipp, presiding Judge, and a jury, at Darlington on November 13, 1922, and resulted in a verdict for the plaintiff for $176.60.

"The defendant moved for a new trial on the grounds that there was no evidence to support the verdict, and that the trial Judge had erred in refusing the defendant's fourth and sixth requests to charge, which hereinafter appear. This motion was refused and the defendant appeals from the judgment on said verdict."

The defendant appealed upon the following exceptions:

"I. That his Honor, the presiding Judge, erred in refusing defendant's request that he instruct the jury as follows: 'Mr. Sumner has alleged that A. R. Durkee & Co., of Philadelphia, Pa., were his agents. If and when they received notice of the arrival of the cotton in question, it was their duty to receive it, and Mr. Sumner would be responsible and liable for all proper storage charges that accrued after refusal to receive it,' and in instructing the jury that they need not concern themselves with any storage charge at all.

"II. That his Honor, the presiding Judge, erred in refusing defendant's request that he instruct the jury as fol-

lows: 'Mr. Sumner has alleged that A. R. Durkee & Co. were his agents. If they received notice of the arrival of the cotton and refused to receive it, the lawful expenses of the sale are properly deductible from the proceeds of sale, if the cotton was sold, according to law; and such expenses must be paid by Mr. Sumner.'

"III. That his Honor, the presiding Judge, erred in refusing defendant's request that he instruct the jury as follows: 'There being no evidence of any injury to or conversion of the cotton in question, the measure of damages is the difference between the market value of the cotton when it should have arrived and such value when it did arrive. Therefore, even if it were admitted that the defendant, Seaboard Air Line Railway Company, is liable for any amount, Mr. Sumner would not recover, in any event, more than the difference between the value of the cotton at the time when it should have arrived and such value when it did arrive; and he cannot recover any difference in value if, at any time after the cotton arrived, he or his agents could have accepted and sold the same without any loss, but refused to do so.'

"IV. That his Honor, the presiding Judge, erred in refusing defendant's request that he instruct the jury as follows: 'The requirements of Seaboard Air Line Railway tariff or circular I. C. C. No. A-2843, are binding upon Mr. Sumner as well as upon the Seaboard, and could not be waived, and Mr. Sumner cannot recover any loss on account of delay in the transportation of the cotton resulting from noncompliance with the provisions of the said tariff or circular.'

"V. That his Honor, the presiding Judge, erred in refusing defendant's request that he instruct the jury as follows: 'If the cotton was offered to Mr. Sumner, through his attorneys, after this action was commenced and he failed or refused to accept the same, and if, at the time, the cotton was worth as much as or more than it was worth when it should have arrived in Philadelphia, and if by then accepting it he

would have suffered no loss, he cannot recover any amount, and your verdict must be for the defendant.'

"VI. That there is no evidence to support the verdict of the jury, and the Circuit Judge erred in refusing defendant's motion for a new trial on that ground."

The reasons why the exceptions numbered 1, 2, 3, 4, and 5 cannot be sustained are fully stated in the charge of his Honor, the presiding Judge, which will be incorporated in the report of the case, as the questions presented by the exceptions can be more clearly understood when the charge is considered in its entirety.

The sixth exception cannot be sustained for the reason that there was testimony tending to support the verdict, and for the additional reason that there was neither a motion for a nonsuit nor the direction of a verdict, as required by rule 77 of the Circuit Court, which provides that—

"The point that there is no alleged evidence to support a cause of action shall be first made either by a motion for a nonsuit or a motion to direct the verdict."

Appeal dismissed.

MESSRS. JUSTICES WATTS, FRASER, COTHRAN and MARION concur.

MR. JUSTICE COTHRAN (concurring): The appeal does not raise the question whether or not the initial carrier, whose agent accepted the shipment in disregard of the regulations duly filed with the Interstate Commerce Commission and promulgated, would be liable under the Carmack Amendment for the delay by the connecting and terminal carrier. The contention disclosed in the Fourth exception, which alone touches the subject, is that the initial carrier is not liable for a delay resulting from noncompliance with those regulations. The only evidence of delay is by the Clyde Line, and that was due to their own regulations not to accept burnt cotton; their rejection was not at all connected with the regulations of the railway company. For

all that appears to the contrary, the Clyde Line would have acted as they did even if the regulations had been complied with. Whether they were justified in rejecting the cotton, and, if not, whether the liability of an initial carrier under the circumstances should be visited upon the defendant, are questions not raised by the appeal.